Docket No. 14 Civ. 9220 (PGG)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELIANA DE LA CRUZ,

Plaintiffs,

-against-

CITY OF NEW YORK

Defendant.

**DEFENDANT'S OBJECTIONS PURSUANT FEDERAL RULE OF CIVIL PROCEDURE 72(B) TO THE OCTOBER 30, 2020 REPORT AND RECOMMENDATION**

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for City Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:*  Andrea O'Connor
*Tel:  (212) 356-4015*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ...........................................................................................2

ARGUMENT

          PLAINTIFFS' DISPARATE FACTUAL CIRCUMSTANCES PRECLUDE A UNIFORM SIMILARLY SITUATED FINDING ......................................................2

          A.    Scott Does Not Require Collective Treatment for the Purposes of Trial...................................................................3

          B.    The Ad Hoc Approach Followed by Campbell, Adams, Worley and Perry Precludes Collective Treatment at Trial..........................................14

CONCLUSION..........................................................................................................17

## TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

Adams v. City of N.Y.,
   No. 16-CV-3445 (RA),
   2020 U.S. Dist. LEXIS 37500 (S.D.N.Y. Mar. 3, 2020)..................................................10, 11

Campbell v. City of N.Y.,
   No. 16 Civ. 8719 (AJN),
   2020 U.S. Dist. LEXIS 94226 (S.D.N.Y. May 29, 2020) ...........................................7, 10, 11

Foster, et al. v. City of New York,
   Docket No. 14 Civ. 4142 (PGG)(RWL)...................................................................................1

Gardner v. W. Beef Properties, Inc.,
   No. 07 Civ. 2345 (NGG) (JMA),
   2013 U.S. Dist. LEXIS 56511 (E.D.N.Y. Mar. 25, 2013)........................................................3

Levy v. Young Adult Inst., Inc.,
   103 F. Supp. 3d 426 (S.D.N.Y. 2015).....................................................................................2

Pequero v. Montafon, LLC, No. 18 CV 12187 (DF),
   2020 U.S. Dist. LEXIS 125500 (S.D.N.Y. July 15, 2020)......................................................9

Perry v. City of N.Y.,
   No. 13 Civ. 1015 (VSB),
   2019 U.S. Dist. LEXIS 40696 (S.D.N.Y. Mar. 13, 2019)
   ....................................................................................................... 10, 11, 12, 13

Scott v. Chipotle Mexican Grill,
   Inc., 300 F.R.D. 188 (S.D.N.Y. 2014)......................................................................................5

Scott v. Chipotle Mexican Grill, Inc.,
   954 F.3d 502 (2d Cir. 2020) ......................................................................2, 3, 4, 5, 6, 9, 10

Worley v. City of N.Y.,
   17 Civ. 4337 (LGS) 2020 U.S. Dist. LEXIS 32931 (S.D.N.Y. Feb. 26, 2020).... 10, 11, 12, 13

**Cases**                                                                                    **Pages**

Zivali v. AT & T Mobility, LLC,
   784 F. Supp. 2d 456 (S.D.N.Y. 2011) ....................................................................3

**Statutes**

28 U.S.C. § 636(b)(1)(C).................................................................................................2

29 U.S.C. § 216(b) ............................................................................................. 1, 3, 4, 12

Fed. R. Civ. P. 23...........................................................................................................3, 4

Fed. R. Civ. P 72(b) ............................................................................................... 1, 2, 10

## PRELIMINARY STATEMENT

Plaintiffs are more than 800 current or former Job Opportunity Specialists ("JOS") and Associate Job Opportunity Specialists Level I ("AJOS I")—most of whom are the JOS' immediate supervisors—employed in the Human Resources Administration ("HRA") of the City of New York ("Defendant").  Plaintiffs claim that they are owed additional overtime wages under the Fair Labor Standards Act, 29 U.S.C. 201 et seq. ("FLSA") for time that they allegedly worked but did not request to be paid through Defendant's established timekeeping procedure.

On June 20, 2018, the Court ordered that Plaintiffs provide briefing supporting their position that all Plaintiffs in this case, as well as the Plaintiffs in the related case of Foster, et al. v. City of New York, Docket No. 14 Civ. 4142 (PGG)(RWL), are similarly situated to all other Plaintiffs such that their off-the-clock claims can proceed to trial with representative evidence.  The issue was thereafter fully briefed and referred to Magistrate Judge Robert W. Lehrburger for a Report and Recommendation on a Dispositive Motion.  See Dkt. No. 211.  On October 30, 2020, Magistrate Judge Lehrburger issued a Report and Recommendation ("Report") finding that, for the purposes of Plaintiffs' off-the-clock overtime claims, all the De La Cruz Plaintiffs are similarly situated to each other and all the Foster Plaintiffs are similarly situated to each other pursuant to 29 U.S.C. § 216(b), such that both cases should proceed to trial based on representative evidence.

Defendant now respectfully submits its objections to the Report pursuant to Federal Rule of Civil Procedure 72(b).  As fully set forth below, Defendant objects to the Report's finding that, for the purposes of Plaintiff's off-the-clock overtime claims, all the De La Cruz Plaintiffs are similarly situated to each other such that their claims can proceed collectively to trial.  As such, Defendant respectfully requests that the Court reject the finding that that all the

<u>De La Cruz</u> Plaintiffs are similarly situated to <u>all</u> their co-plaintiffs and modify the Report to find as follows: (1) all Plaintiffs assigned to the Family Independence Administration ("FIA") are similarly situated to each other such that their claims can proceed collectively to trial; (2) all Plaintiffs assigned to the Homelessness Diversion Program ("HDP") are similarly situated to each other such that their claims can proceed collectively to trial; and (3) all Plaintiffs assigned to the Division of Fair Hearing ("DFH") are similarly situated to each other such that their claims can proceed collectively to trial.

## STATEMENT OF FACTS

For a full and complete recitation of the facts and procedural history relevant to these Objections, Defendant respectfully refers the Court to its Memorandum of Law in Opposition to Plaintiffs' Motion for a Finding that Plaintiffs are Similarly Situated, dated August 23, 2018, at Dkt. No. 180 ("Defendant's Opp.").

## ARGUMENT

### PLAINTIFFS' DISPARATE FACTUAL CIRCUMSTANCES PRECLUDE A UNIFORM SIMILARLY SITUATED FINDING

In reviewing a report and recommendation, a District Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where a timely objection has been made to the Magistrate Judge's recommendations, the District Court Judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." <u>Id.</u>

2

**A.**     **<u>Scott</u> Does Not Require Collective Treatment for the Purposes of Trial**

In considering Rule 72(b) objections, a Court has the discretion to consider arguments not previously presented to the Magistrate Judge in connection with a report and recommendation.  <u>See</u> <u>Levy v. Young Adult Inst., Inc.</u>, 103 F. Supp. 3d 426, 433 (S.D.N.Y. 2015).  Here, the instant motion was fully submitted as of September 6, 2018.  <u>See</u> Dkt. Nos. 186-191.  The Second Circuit decision which forms the basis for much of the Report's legal findings, <u>Scott v. Chipotle Mexican Grill, Inc.</u>, 954 F.3d 502, 516 (2d Cir. 2020), was issued on April 1, 2020.  As such, Defendant respectfully requests the Court permit it to address the Report's findings pursuant to <u>Scott</u> in these objections given the fact that this was an intervening case which has changed the state of the law with respect to Plaintiffs' similarly situated claims.

Until recently, the Second Circuit considered three factors when examining whether plaintiffs are similarly situated: "the (1) disparate factual and employment settings of the plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against collective action treatment."  <u>Zivali v. AT & T Mobility, LLC</u>, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011).  This analysis is often referred to as the "ad hoc" approach.  <u>Gardner v. W. Beef Properties, Inc.</u>, No. 07 Civ. 2345 (NGG) (JMA), 2013 U.S. Dist. LEXIS 56511, at *4 (E.D.N.Y. Mar. 25, 2013).

Nineteen months after briefing closed in connection with this motion, the Second Circuit questioned the use of this "ad hoc" approach in <u>Scott</u>.  954 F.3d at 517.  The majority first held that "to be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation."  <u>Scott</u>, 954 F.3d at 517.  The Court further held that "if named plaintiffs and party plaintiffs share legal or factual similarities material to the disposition of their claims, dissimilarities in other respects should not defeat

collective treatment." Id. (internal citations and quotations omitted).  The Court then compared the requirements of 29 U.S.C. § 216(b) with the predominance requirement of Rule 23, ultimately holding that the two analyses were different.  Because of this, the Court held that the district court had committed an abuse of discretion by applying a higher level of scrutiny to a large collective through analogies to the predominance requirement of Rule 23, as opposed to solely determining whether the plaintiffs were similarly situated. Id. at 520-21.  However, Scott does not explicitly forbid the use of the "ad hoc" approach; rather, Scott holds that "it is error for courts to equate the requirements of § 216(b) with those of Rule 23 in assessing whether named plaintiffs are 'similarly situated' to opt-in plaintiffs under the FLSA." Id. at 520.

> Further, in remanding the matter, the Circuit ordered that the
>
> district court shall reconsider whether named plaintiff and opt-in plaintiffs are "similarly situated" -- that is, whether they share one or more similar questions of law or fact material to the disposition of their FLSA claims.  In doing so, the district court shall take into account its conclusion with respect to commonality that "the question of whether Apprentices were misclassified as exempt employees is common to all class members because it can be answered with common proof." Scott, 2017 U.S. Dist. LEXIS 62902 at *3.  **This conclusion was based on the district court's findings that (1) "Chipotle uniformly classified all Apprentices as exempt, (2) "Chipotle has an expectation that the core duties of the Apprentice is the same," and (3) "Chipotle uses a single job description for all Apprentices."**

Id. (internal quotation marks omitted)(emphasis added).

Critical to this case, is the Court's holding that "[i]f the opt-in plaintiffs are similar to the named plaintiffs in some respects material to the disposition of their claims, collective treatment *may be to that extent* appropriate, as it may *to that extent* facilitate the collective litigation of the party plaintiffs' claim." Id.

In relying on <u>Scott</u>, the Report found that "Plaintiffs easily meet the particularly 'low bar' of the <u>Scott</u> similarly situated standard."  Report at 17 <u>citing</u> <u>Scott</u>, 954 F.3d at 516. For the reasons set forth below, Defendant respectfully submits that the Report's finding that all <u>De La Cruz</u> Plaintiffs in this case are similarly situated to each other such that their claims can proceed collectively to trial should be rejected and modified as follows: (1) all Plaintiffs assigned to FIA are similarly situated to each other such that their claims can proceed collectively to trial; (2) all Plaintiffs assigned to HDP are similarly situated to each other such that their claims can proceed collectively to trial; and (3) all Plaintiffs assigned to DFH are similarly situated to each other such that their claims can proceed collectively to trial.

The Report's finding that, under <u>Scott</u>, all Plaintiffs are similarly situated to each other overlooks several critical factual distinctions between this case and <u>Scott</u>.  Importantly, <u>Scott</u> proceeded as a collective nearly from its inception. The <u>Scott</u> plaintiffs, as is customary in large-scale FLSA actions, filed a conditional certification motion early in the litigation seeking a preliminary finding that the plaintiffs were similarly situated such that discovery could proceed on a collective basis.  <u>See</u> <u>Scott v. Chipotle Mexican Grill</u>, Inc., 300 F.R.D. 188 (S.D.N.Y. 2014).  Thereafter, on June 20, 2013, Judge Andrew L. Carter conditionally certified the <u>Scott</u> plaintiffs' collective action under FLSA.  <u>Id.</u>  In 2014, Magistrate Judge Sarah Netburn issued an order concerning the scope of opt-in discovery which held that the defendant was not entitled to individualized discovery on each opt-in because "the opt-in plaintiffs all have the same job title [Apprentice], same primary duties, and same exemption classification."  <u>Id.</u> at 191.

Even at this early stage of litigation, the <u>Scott</u> case diverges from <u>De La Cruz</u> in several critical ways.  First, the <u>De La Cruz</u> Plaintiffs' never sought conditional certification and therefore there was no preliminary finding that Plaintiffs were similarly situated.  Why the <u>De La</u>

Cruz Plaintiffs never sought conditional certification at the beginning of this litigation has never been explained.  In any event, unlike in Scott, discovery and summary judgment motion practice proceeded in this case without any preliminary finding that all Plaintiffs were similarly situated.  This is important because there was never a preliminary finding that the Plaintiffs that were selected by the parties to serve as "Phase I" Plaintiffs in this case were similarly situated to each other.  This is the same pool of Plaintiffs that may potentially testify at trial.

Second, it was undisputed from the outset that the Scott plaintiffs all held the exact same job title, performed the exact same primary job duties and had the exact same exemption classification.  See Scott, 300 F.R.D. 188 ("the opt-in plaintiffs all have the same job title [Apprentice], same primary duties, and same exemption classification.").  Further, it was undisputed that all of the Scott plaintiffs performed their duties in the exact same type of work location, namely a Chipotle restaurant.

In contrast, here, Plaintiffs perform vastly different duties depending on their work assignment.  Plaintiffs assigned to FIA work at a Job Center, the Family Service Call Center or one of four satellite call centers.  See Defendant's Opp. at 5.  Call centers differ from Job Centers in that Plaintiffs typically conduct face-to-face interviews with clients at Job Centers whereas at call centers Plaintiffs are charged with answering calls from clients.  Id.  Within the Job Centers, JOS and most AJOS I workers are assigned to one of four distinct units: (i) the Case Management Unit; (ii) the Customer Service Information Center; (iii) the Processing Unit; and (iv) the Fair Hearing Compliance Unit.  Id. at 6.  In the Case Management Unit, workers accept applications, address client requests and conduct face-to-face interviews with clients.  The Customer Service Unit handles return documents brought in by clients, as well as rent arrears, utility arrears and other client requests.  Both the Case Management Unit and Customer Service

Unit involve frequent client interviews.  Conversely, Plaintiffs assigned to the Processing or Fair Hearing Compliance Units do not regularly interview clients.  The Processing Unit processes benefits applications and makes determinations as to benefits eligibility.  The Fair Hearing Compliance Unit processes decisions issued by a judge with regard to the benefits eligibility of clients.  This unit works to ensure that a case file complies with the judge's order.  Id. at 6.

Plaintiffs assigned to HDP can be assigned to a variety of locations, including within a Job Center, at the Department of Homeless Services' facilities throughout the City or in homeless shelters.  Id. at 7.  At Job Centers, JOS and AJOS Is in HDP assist clients obtain housing-related benefits which entails meeting with clients at the Job Center, who come in both on a walk-in basis and by appointment.  Id.

In DFH, non-supervisory AJOS Is are typically responsible for preparing evidence packets, which entails reviewing electronic fair hearing requests and making a determination of whether or not the case is defendable, or alternatively, should be resolved.  Id. at 8.  The JOS employed in DFH work in various processing roles, including processing defaults, continuing aid requests and resolutions.  Id.

With these differences in mind, it is clear that the factual underpinnings here are exactly opposite to those in Scott.  Here, it undisputed that: (1) Plaintiffs hold two different titles, namely JOS and AJOS I; (2) that a Plaintiff in one of these titles performs different job functions than those in the other title; (3) that Plaintiffs holding the AJOS I title had a different exemption classification than those holding the JOS title; and, **most significantly**, (4) Plaintiffs could be assigned to up to 56 unique work locations within three different divisions within HRA.

Despite the glaring differences between the facts in Scott and those presented here, the Report fails to address them.  In so doing, the Report **only** focuses on the contention

that each Plaintiff was subject to the same workplace policies regarding overtime.  Specifically, the Report found that "all Plaintiffs in each case were subject to the same CityTime-keeping and compensation policies . . . [a]nd, with respect to legal issues, Plaintiffs share, for example, the City's obligation under the FLSA to pay for all overtime about which it had knowledge, regardless if pre-approved or not."  Report at 17.  This, Defendant respectfully submits, is insufficient.  While Plaintiffs may have succeeded in demonstrating an allegedly unlawful policy regarding overtime, ignoring the differing work conditions and job functions that underlie this policy would have deleterious effects on a trial in this case and others.

In <u>Scott</u>, the plaintiffs alleged that that they were all subjected to the same unlawful policy; namely that employees in the "Apprentice" title were improperly classified as exempt under the FLSA.  However, there were many more similarities between the plaintiffs beyond that of just a uniform policy.  In <u>Scott</u>, all the plaintiffs also performed the exact same primary job duties in the exact same type of work location.  Thus, in <u>Scott</u> there was a uniform policy, <u>and</u> uniform job duties <u>and</u> uniform work locations.  No so here.

Plaintiffs also recognize that they do not perform the same or similar functions.  In their moving papers Plaintiffs acknowledge that only those Plaintiffs assigned to the same division within HRA perform the same or similar job duties.  <u>See</u> Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for a Finding that the Plaintiffs are Similarly Situated Under the Fair Labor Standards Act, Dkt. No. 179 at pgs. 7-8.  Again, this differs dramatically from the factual scenario present in <u>Scott</u> which was that all the plaintiffs were subjected to the same uniform policy and performed the same work at a Chipotle restaurant.

Indeed, if a plaintiff need only show that they were subject to the same alleged unlawful policy, such as the "same CityTime-keeping and compensation policies," in order to

satisfy the similarly situated standard articulated in <u>Scott</u>, then it necessarily follows that the hundreds of thousands of City employees that utilize CityTime and are subject to the City's uniform overtime policies, could be deemed similarly situated for the purposes of an off-the-clock claim.  This would mean that an AJOS I employed at DHS could be deemed to be similarly situated to hundreds of thousands of other City employees.

By way of example, just like an AJOS I assigned to DFH, a Special Officer working in a City homeless shelter employed by City's Department of Homeless Services is required to use CityTime, is required to receive approval in advance of working overtime, has an automatic deduction for meal breaks and is entitled to compensation for pre-shift, meal-period, and post-shift work about which supervisors and managers had knowledge.  <u>See</u> <u>Campbell v. City of N.Y.</u>, No. 16 Civ. 8719 (AJN), 2020 U.S. Dist. LEXIS 94226 (S.D.N.Y. May 29, 2020).[1] In fact, the same can be said for nearly all City employees that utilize CityTime and are eligible to receive FLSA overtime.

This, however, is where the similarities end.  A non-supervisory AJOS I assigned to DHF prepares evidence packets for matters that are going to a hearing.  In contrast, Special Officers are employed by a different City agency, are assigned to work in completely different work locations and have entirely dissimilar job duties (i.e. Special Officers perform patrol functions at DHS facilities, screen employees and visitors at the City's homeless shelters, make arrests, issue summonses, transport individuals in custody to police precincts, respond to emergency situations, etc.).  <u>See</u> <u>id</u>.

---

[1] <u>Campbell</u> was relied upon by Magistrate Judge Lehrberger in the Report.  The plaintiffs in <u>Campbell</u> are also represented by the same attorneys as the <u>De La Cruz</u> and <u>Foster</u> plaintiffs.

Nevertheless, following the reasoning of the Report, an AJOS I at DHF would be deemed similarly situated to a Special Officer for an off-the-clock claim because they are subject to the same City-wide timekeeping requirements and overtime policies.  The same could be said for hundreds of other job titles within the City because the employees adhere to the same set of broad City-wide timekeeping policies.  This would be despite the fact that they are performing vastly divergent tasks during the time at issue in the off-the-clock claim.  Such a holding would essentially obliterate the need for any "similarly situated" analysis beyond an examination of workplace policies.

In this case, the impact of disregarding the differences attributable to the Plaintiffs' vastly different assignments is further illustrated by utilizing trial as an example.  If the Report's finding that all the De La Cruz Plaintiffs are similarly situated to all their co-plaintiffs remains intact it would necessarily follow that, at trial, only Plaintiffs assigned to DFH could testify and these Plaintiffs would adequately represent the claims of their co-Plaintiffs assigned to FIA and/or HDP.  This is despite the fact that Plaintiffs assigned to DFH perform dramatically different work which necessarily impacts their off-the-clock claims.

A trial in this case, however, would never proceed on just the testimony of Plaintiffs assigned to DFH.  Indeed, neither party would agree to this approach.  The reason being:  the factual circumstances underlying the off-the-clock claims of Plaintiffs assigned to DFH are different from those underlying the off-the-clock claims of those Plaintiffs assigned to FIA or HDP.  As such, it is clear that trial in this case cannot proceed under a theory that all the De La Cruz Plaintiffs are similarly situated to all their co-plaintiffs.  Defendant therefore respectfully submits that this Court should modify the Report to take in account the differences between the three different assignments at issue in this case.  Indeed, this is the approach that

was advanced by Plaintiffs' counsel in <u>Worley v. City of N.Y.</u>, 17 Civ. 4337 (LGS), 2020 U.S. Dist. LEXIS 32931 (S.D.N.Y. Feb. 26, 2020). <u>Worley</u> was also relied upon by Judge Lehrberger in the Report.

In <u>Worley</u>, the plaintiffs – who, again, share the same counsel as Plaintiffs' herein – advocated for a finding that only those plaintiffs assigned to type of job assignment should be deemed similarly situated. <u>See</u> <u>Worley</u>, 2020 U.S. Dist. LEXIS 32931, at *63. The plaintiffs in <u>Worley</u> were 3,879 current and former School Safety Agents ("SSAs"), employed by the New York City Police Department's School Safety Division ("SSD"), who alleged that the City failed to compensate SSAs for performing uncompensated pre-shift, meal-period and travel-time work. <u>See</u> <u>id.</u> All the plaintiffs in <u>Worley</u> held the same title, i.e. SSA Level One, but were assigned to work in one of three different assignments: (1) providing security services at City schools ("School-Based SSAs"); (2) providing security services by vehicle within a particular borough as part of a Mobile Task Force ("MTF SSAs"); and (3) performing office work at Borough Command offices ("Borough Command SSAs"). <u>Id.</u> at *57.

It is critical to highlight the fact that in <u>Worley</u> all the plaintiffs were subjected to the exact same timekeeping and overtime policies.

It is critical to highlight the fact that in <u>Worley</u> all the plaintiffs were subjected to the exact same timekeeping and overtime policies.

In their motion under 29 U.S.C. § 216(b) for final certification of a collective, the <u>Worley</u> plaintiffs "propose[d] that the collective be separated into three subgroups for final certification purposes and contend that SSAs within each subgroup -- School-Based SSAs, MTF SSAs and Borough Command SSAs -- are similarly situated." <u>Id.</u> at *63. The Court agreed and granted the plaintiffs' motion that School-Based SSAs are similarly situated to each other for

their off-the-clock claim, MTF SSAs are similarly situated to each other for their off-the-clock claim and Borough Command SSAs are similarly situated to each other for the travel-time portion of their off-the-clock claim. Id. at *78. As such, the Court – and the plaintiffs' themselves – recognized that even though the plaintiffs were subject to the same workplace policies, the plaintiffs could not be all deemed similarly situated to each other due to their divergent job duties.

Plaintiffs' counsel again advocated for the same position in Perry v. City of N.Y., No. 13 Civ. 1015 (VSB), 2019 U.S. Dist. LEXIS 40696 (S.D.N.Y. Mar. 13, 2019). Plaintiffs in Perry sought a finding that all plaintiffs who performed patient care duties (i.e. Emergency Medical Technicians ("EMTs") and Paramedics) were similarly situated to each other and a separate finding that the plaintiffs who performed fire inspection duties were similarly situated to each other. See Perry, 2019 U.S. Dist. LEXIS 40696, at *1-2 ("Before me is Plaintiffs' motion for a finding that they are similarly situated under the FLSA. (Doc. 180.) Specifically, Plaintiffs request a finding that they are similarly situated in two subgroups: (1) EMTs and Paramedics who are assigned to work on ambulances in the field; and (2) Fire Inspectors."). Judge Broderick agreed that a delineation by job duty was proper and therefore ruled that the plaintiffs performing patient care duties were similarly situated to each other such that their claims could proceed collectively to trial and that the plaintiffs performing fire inspection duties were similarly situated to each other such that their claims could proceed collectively as well.

Here, the same logic should prevail. It is undisputed that Plaintiffs perform different functions based on their assignment. Separating the collective into three subgroups for the purposes of trial is in keeping with the Circuit's decision in Scott as well as with Judge Schofield's and Judge Broderick's respective reasoning in Worley and Perry.

As such, Defendant respectfully requests that the Court reject the finding that <u>all</u> the <u>De La Cruz</u> Plaintiffs are similarly situated to <u>all</u> their co-plaintiffs and modify the Report as follows:  (1) all Plaintiffs assigned to FIA are similarly situated to each other such that their claims can proceed collectively to trial; (2) all Plaintiffs assigned to HDP are similarly situated to each other such that their claims can proceed collectively to trial; and (3) all Plaintiffs assigned to DFH are similarly situated to each other such that their claims can proceed collectively to trial.  This commonsense approach recognizes the differences between the three categories of Plaintiffs at issue here and is in keeping with the holding in <u>Scott</u>.

Finally, while the Report notes that "the issue raised by the instant motion is quite consequential as it will determine whether there are over 2,000 trials or two trials," Report at 28, this all-or-nothing approach is not the only option.  This case need not be fractured into hundreds of individual actions.  Because this case has never been certified as a collective action, no claims would be dismissed upon a finding that certain Plaintiffs are not similarly situated to certain other Plaintiffs.  Rather, the question here is just whether the claims of all Plaintiffs can proceed collectively to trial.  A finding that each Plaintiff is similarly situated to the other Plaintiffs in the same job assignment is in keeping with <u>Scott</u> which contemplates collective treatment may be appropriate up to a certain point. <u>Scott</u>, 954 F.3d at 517.  Here, that "certain point" is a delineation by job assignment for the purposes of trial.

Judge Debra Freeman recently applied this standard from <u>Scott</u> in connection with a motion for conditional certification.  <u>See</u> <u>Pequero v. Montafon</u>, LLC, No. 18 CV 12187 (DF), 2020 U.S. Dist. LEXIS 125500 (S.D.N.Y. July 15, 2020).  In <u>Pequero</u>, the plaintiffs sought conditional certification in connection with the claims of employees of defendant-restaurant in the titles cooks, salad makers, dishwashers, prep cooks and delivery workers.  <u>Id.</u> at *24.  With

respect to employees in the titles salad makers and dishwashers, the Court held that employees in these titles were similarly situated because, at some point during their employment, all the named Plaintiffs performed the functions of both titles and all were subject to the same compensation policies.  Id. at *26.  However, the Court denied conditional certification with respect to the remaining titles given "the diversity of positions, responsibilities, work hours, and rate of pay." Id. at *29 citing Scott, 954 F.3d at 516.  As such, the Court found collective treatment was appropriate to the extent the plaintiffs performed the same work functions at some point during the relevant time period and were subjected to the same compensation.  Here, the same logic applies.  Collective treatment is appropriate to the extent that Plaintiffs perform the same functions and are subject to the same compensation policies.

As such, in keeping with the holding in Scott collective treatment is appropriate to the extent it facilitates the litigation of claims, Defendant respectfully requests that the Court reject the finding that that all the De La Cruz Plaintiffs are similarly situated to all their co-plaintiffs and modify the Report as follows: (1) all Plaintiffs assigned to FIA are similarly situated to each other such that their claims can proceed collectively to trial; (2) all Plaintiffs assigned to HDP are similarly situated to each other such that their claims can proceed collectively to trial; and (3) all Plaintiffs assigned to DFH are similarly situated to each other such that their claims can proceed collectively to trial.

## B.      The Ad Hoc Approach Followed by Campbell, Adams, Worley and Perry Precludes Collective Treatment at Trial

As noted above, in considering Rule 72(b) objections, a Court has the discretion to consider arguments not previously presented to the Magistrate Judge in connection with a report and recommendation.  Here, the Report's analysis of the "ad hoc" approach centers on four decisions that were issued after the close of briefing for this motion and prior to the decision

in Scott.  See Report at 21 citing Campbell, 2020 U.S. Dist. LEXIS 94226; Adams v. City of N.Y., No. 16-CV-3445 (RA), 2020 U.S. Dist. LEXIS 37500 (S.D.N.Y. Mar. 3, 2020); Worley, 2020 U.S. Dist. LEXIS 32931; Perry, 2019 U.S. Dist. LEXIS 40696.  As such, Defendant respectfully requests the Court permit it to address the Report's findings as to these four cases in these objections given the fact that these were intervening cases which, arguably, have changed the state of the law with respect to Plaintiffs' similarly situated claims.

As an initial matter, it is important to note that Plaintiffs' counsel here also represents the plaintiffs in these four actions. Further, Adams, Worley and Campbell are readily distinguishable from this case because the motions before the Court in those cases were to decertify the collective.  Not so here.  Here, there is no "collective" to decertify.  Rather, the issue now before the Court is whether the off-the-clock claims of all the Plaintiffs can proceed collectively to trial.  This is an entirely different question than that raised in Adams, Worley and Campbell and one that has not yet been addressed in Adams or Campbell.[2]  To be sure, there has never been a finding that one trial on all the plaintiffs' off-the-clock claims is appropriate in either Adams or Campbell.  Further, both the Campbell and Perry decisions contemplate the possibility of bifurcated trials.  See Campbell, 2020 U.S. Dist. LEXIS 94226, at *31 citing Perry. Here, the circumstances require that any trial be bifurcated by job assignment with respect to Plaintiffs' off-the-clock claims.

Turning to Perry, as noted above, the Report entirely ignores the fact that, in Perry, the plaintiffs did not seek a finding that all the plaintiffs in Perry were similarly situated to one another.  See Perry, 2019 U.S. Dist. LEXIS 40696, at *1-2; see also Perry, No. 13 Civ. 1015 (VSB), Dkt No. 181.  Rather, the plaintiffs in Perry sought a finding that all plaintiffs who

---

[2] Worley was resolved via settlement.

performed patient care duties were similarly situated to each other and a separate finding that the plaintiffs who performed fire inspection duties were similarly situated to each other. See Perry, 2019 U.S. Dist. LEXIS 40696, at *1-2.

While the Report contains a discussion of the facts applicable to Perry, it completely overlooks this critical point. Indeed, the Report ignores the fact that in Perry the Court was not asked to find that all the plaintiffs were similarly situated to all other plaintiffs as is the case here. Rather, in Perry, Judge Broderick was asked to decide whether certain plaintiffs were similarly situated to certain other plaintiffs. This is a significant distinction and one that was entirely ignored by the Report. In fact, the result reached in Perry is the exact result Defendant is requesting now.

Similarly, as also noted above, in Worley, the plaintiffs advocated for a finding that only certain plaintiffs were similarly situated to certain other plaintiffs. See Worley, 2020 U.S. Dist. LEXIS 32931, at *63. Once again, however, the Report completely ignores this fact. Indeed, the outcome that is sought by Defendant here – namely that those Plaintiffs with the same job assignment be deemed similarly situated to each other – was the exact result sought by the plaintiffs and thereafter reached by Judge Broderick and Judge Schofield in their respective decisions in Perry and Worley.

To drive this point home, in Perry and Worley, the plaintiffs – who share the same counsel as Plaintiffs' herein – were advocating for the very same outcome sought now by the City; namely, that the Plaintiffs be segmented – for purposes of trial – by job assignment such that the claims of all Plaintiffs sharing the same assignment proceed to trial collectively.

## CONCLUSION

For the foregoing reasons, and for those set forth in Defendant's Memorandum of Law in Opposition to Plaintiff' Motion for a Finding that Plaintiffs are Similarly Situated Defendant, respectfully requests that this Court grant Defendant's Objections to the Report and Recommendation and reject the finding that that all the De La Cruz Plaintiffs are similarly situated to all their co-plaintiffs and modify the Report to find as follows: (1) all Plaintiffs assigned to FIA are similarly situated to each other such that their claims can proceed collectively to trial; (2) all Plaintiffs assigned to HDP are similarly situated to each other such that their claims can proceed collectively to trial; and (3) all Plaintiffs assigned to DFH are similarly situated to each other such that their claims can proceed collectively to trial.

Dated:       New York, New York
             December 4, 2020

JAMES E. JOHNSON
Corporation Counsel of the
   City of New York
Attorney for Defendant
100 Church Street, Room 2-104
New York, New York 10007
(212) 356-4015
aoconnor@law.nyc.gov


By:       _____/s/_____
          Andrea O'Connor
          Assistant Corporation Counsel