UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KEISHA FOSTER et al.,

                 Plaintiffs,

v.

CITY OF NEW YORK, NEW YORK,

                 Defendant.

---

ELIANA DE LA CRUZ et al.,

                 Plaintiffs,

v.

CITY OF NEW YORK, NEW YORK,

                 Defendant.

**ORDER**

14 Civ. 4142 (PGG)
14 Civ. 9220 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

         Plaintiffs in these actions are current and former employees of the City of New York ("the City") who contend that the City violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 et seq., by not paying overtime rates for work performed before and after shifts and during off-the-clock meals.[1] (Foster SAC (Dkt. No. 28) ¶¶ 34-57; De La Cruz Cmplt. (Dkt. No.1) ¶¶ 30-53)

---

[1] Foster and De La Cruz were filed on June 9, 2014, as one case, which was assigned docket number 14-cv-4142. (Cmplt. (Dkt. No. 2 in 14-cv-4142)) On September 10, 2014, the parties jointly proposed that "it [wa]s in the interests of justice for the Court to sever from the Foster case the plaintiffs who are current or former Job Opportunity Specialists (JOS) and Associate Job Opportunity Specialists (AJOS)." (Dkt. No. 20 in 14-cv-4142) This Court adopted the parties' joint proposal that same day. (Dkt. No. 21 in 14-cv-4142) On November 11, 2014, the Court ordered Plaintiffs to "[e]stablish a separate docket number for a severed case on behalf of the [De

Pending before the Court is Plaintiffs' motion for a finding that Plaintiffs in each case are similarly situated under the FLSA. (Foster Dkt. No. 186; De La Cruz Dkt. No. 178) This Court referred the motion to Magistrate Judge Lehrburger. (Foster Dkt. No. 211; De La Cruz Dkt. No. 203) On October 30, 2020, Judge Lehrburger issued a Report and Recommendation ("R&R") finding that Plaintiffs in each case are similarly situated to each other and recommending "that both cases . . . proceed as collective actions based on representative evidence adduced during discovery." (R&R (Foster Dkt. No. 212)[2] at 31-32)[3] For the reasons set forth below, the R&R will be adopted in its entirety.

## BACKGROUND

I. **FACTS**[4]

    A. **The *Foster* Plaintiffs**

Plaintiffs in Foster are current and former Child Protective Specialists ("CPS"), and Child Protective Specialist Supervisors Levels One and Two ("CPSS I" and "CPSS II,"

---

La Cruz] plaintiffs." (Dkt. No. 27 in 14-cv-4142) That same day, the De La Cruz Plaintiffs filed the operative complaint in a new case, which was assigned docket number 14-cv-9220. (Dkt. No. 1 in 14-cv-9220) On September 30, 2017, the Court issued a summary judgment opinion that addressed both cases. (Summary Judgment Order (Foster Dkt. No. 153; De La Cruz Dkt. No. 150)) Similarly, in connection with the instant motion, Judge Lehrburger issued a single Report & Recommendation ("R&R"). (R&R (Foster Dkt. No. 212; De La Cruz Dkt. No. 204)) The City filed objections for each case separately (Foster Dkt. No. 218; De La Cruz Dkt. No. 209), and Plaintiffs filed corresponding separate responses. (Foster Dkt. No. 220; De La Cruz Dkt. No. 210). Because the legal analysis is the same for each case, this order addresses both cases.
[2] The R&R is also filed on the De La Cruz docket. (Dkt. No. 204)
[3] The page numbers referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.
[4] This Court assumes familiarity with the facts of this case, which are detailed both in this Court's September 30, 2017 Summary Judgment Order (Foster Dkt. No. 153; De La Cruz Dkt. No. 150) and in the R&R (Foster Dkt. No. 212; De La Cruz Dkt. No. 204). Neither side has objected to the facts as set forth in the R&R.

respectively) who work at the New York City Administration for Children's Services' ("ACS") Division of Child Protection.  (Summary Judgment Order (Foster Dkt. No. 153)[5] at 3)

All CPS have similar job duties and "perform similar functions," including conducting safety assessments, court-ordered investigations, and court-supervised removal of at-risk children from unsafe living environments.  (Thomas Dep. Tr. (Foster Dkt. No. 191-9) at 3; Def. 56.1 Response (Foster Dkt. No. 141) ¶¶ 16-26)  All CPSS I serve as a senior member of each unit team and, like CPS, have the "same basic job duties."  (Def. 56.1 Response (Foster Dkt. No. 141) ¶¶ 29, 31)  And all CPSS II, who oversee each unit, have the same job duties, as well.  (Id. ¶ 45; Summary Judgment Order (Foster Dkt. No. 153) at 18)  As of September 2018, there were 1,261 Plaintiffs in Foster.  (Pltf. Br. (Foster Dkt. No. 187) at 6 n.1)

### B.     The *De La Cruz* Plaintiffs

The De La Cruz Plaintiffs are current and former Job Opportunity Specialists ("JOS") and Associate Job Opportunity Specialists Level One ("AJOS") who work at the Human Resources Administration ("HRA") in one of three divisions:  the Homelessness Diversion Unit, the Fair Hearing Unit, or the Family Independence Administration.  (Summary Judgment Order (Foster Dkt. No. 153) at 4)

JOS and AJOS assigned to the Homelessness Diversion Unit interview clients, gather documentation, and input that documentation into the HRA's computer system.  (Id.) Plaintiffs assigned to the Family Independence Administration perform work in job centers located throughout the City where individuals seek cash assistance and medical benefits.  (Id.) Those assigned to the Fair Hearing Unit perform work related to representing and defending the HRA before State of New York hearing officers in actions by clients challenging the services

---

[5]   The Summary Judgment Order is also filed on the De La Cruz docket.  (Dkt. No. 150)

provided. (Id.) As of September 2018, there were 877 Plaintiffs in De La Cruz. (Pltf. Br. (De La Cruz Dkt. No. 179) at 6 n.1)

        C.     **The City's Timekeeping System, Policies, and Practices**

The City's timekeeping policies are integral to the dispute between the parties in both cases. Since 2009, the City has required all Plaintiffs to use its "CityTime" timekeeping system. (Summary Judgment Order (Foster Dkt. No. 153) at 4) All Plaintiffs are scheduled to work five, eight-hour shifts per week. (Id. at 11, 20) Employees "punch in" and "punch out" of CityTime. (Id. at 5) Per the City's policies and expectations, when an employee clocks in, the employee is supposed to begin work, and "not leave the premises except for official business, approved leave, or lunch break." (Id. (quoting McGillivary Appx., Ex. 64 (Marin Dep.) (Foster Dkt. No. 136-66) at 14:11-16)) Not all employees invariably follow this policy every day. (See id. at 5-6, 20-21)

The City does not automatically pay an employee for all time that passes from the time the employee punches in to the time they punch out. (Id. at 9) City policy requires that all overtime work must be pre-approved, whether before, during or after the scheduled eight-hour shift. (Id.) Moreover, in order for an employee to receive overtime compensation, he or she must submit an overtime slip for hours worked beyond their normal schedule, and the time must also be approved in the CityTime system. (Id.) The CityTime system requires employees to certify their timesheets each week, including requests for overtime pay. (Id. at 7) As with other timekeeping procedures, evidence suggests that compliance with this policy varied among employees. (Id. at 9-10)

At summary judgment, this Court concluded that certain Plaintiffs "worked overtime for which they were not compensated, and that [their] supervisors were aware of this practice." (Id. at 9, 14-16)

## II.     PROCEDURAL HISTORY

In early 2015, the parties stipulated that they would conduct "Phase I" discovery regarding five percent of randomly selected Plaintiffs. (Foster Dkt. No. 32; De La Cruz Dkt. No. 30) Forty-one Plaintiffs in Foster and thirty-two Plaintiffs in De La Cruz participated in Phase I discovery, including written discovery and depositions. (June 18, 2018 Order (Foster Dkt. No. 180)[6] at 3-4)

Following Phase I discovery, both sides moved for summary judgment in each case. (Foster Dkt. Nos. 133, 137; De La Cruz Dkt. Nos. 132, 135) The City, however, did not move for "misjoinder/decertification," despite reserving its right to do so in the discovery stipulation. (Stip. (Foster Dkt. No. 32) ¶ 7; (De La Cruz Dkt. No. 30) ¶ 6) On September 30, 2017, this Court issued an Order granting summary judgment to Plaintiffs in both cases with respect to certain liability issues. (Foster Dkt. No. 153) The Court determined that:

> (1) the FLSA's executive exemption does not apply to the Foster and De La Cruz Plaintiffs; (2) the City has violated the FLSA by failing to compensate Plaintiffs for time it suffered or permitted them to work before and after scheduled shifts, and during their unpaid lunch periods; (3) the City has violated the FLSA to the extent that meal allowances and night shift differentials have not been included in calculating the "regular rate of pay" that is relied on for purposes of computing overtime compensation; and (4) the City has violated the FLSA to the extent it has "paid" compensatory time at a straight-time rate.

(Id. at 82) The Court denied summary judgment on the issue of whether the City is liable for delayed payment of overtime. (Id. at 71-72)

---

[6] The June 18, 2020 Order is also filed on the De La Cruz docket. (Dkt. No. 174)

On June 18, 2018, at the City's request, this Court issued an order making clear that, in its summary judgment order, "this Court's holding was limited to a finding that <u>some</u> Plaintiffs had demonstrated as a matter of law that they performed uncompensated overtime work, of which the City had actual or constructive knowledge," and that the Court "did not make a finding as to the City's liability to Plaintiffs on a collective basis." (June 18, 2018 Order (<u>Foster</u> Dkt. No. 180) at 10 (emphasis in original))  Because neither side had addressed, at summary judgment, whether Plaintiffs in the two cases are similarly situated, the Court ruled that "the 'similarly situated' issue must be resolved before this case can proceed." (<u>Id.</u> at 20, 22)

On September 6, 2018, Plaintiffs in both cases moved for a finding that they are similarly situated. (<u>Foster</u> Dkt. No. 186; <u>De La Cruz</u> Dkt. No. 178)  On June 15, 2020, the Court referred the motions to Magistrate Judge Lehrburger. (<u>Foster</u> Dkt. No. 211; <u>De La Cruz</u> Dkt. No. 203)  On October 30, 2020, Judge Lehrburger issued an R&R recommending that this Court find that the <u>Foster</u> Plaintiffs are similarly situated to one another, and that the <u>De La Cruz</u> Plaintiffs are similarly situated to one another. (R&R (<u>Foster</u> Dkt. No. 212; <u>De La Cruz</u> Dkt. No. 204))  The City filed objections in each case. (<u>Foster</u> Dkt. No. 218; <u>De La Cruz</u> Dkt. No. 209)

**DISCUSSION**

**I.     REVIEW OF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  Under 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), a party may submit objections to the magistrate judge's R & R.  Any objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition."  Fed. R. Civ. P. 72(b)(2); <u>see also</u> 28 U.S.C. § 636(b)(1)(C). "'The district judge evaluating a magistrate judge's recommendation may adopt those portions of

6

the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'" Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241 (RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v. TD Waterhouse Inv. Servs., Inc., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)).  A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed."  United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

        Where, as here, a timely objection has been made to a magistrate judge's recommendation, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).  However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'"  Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (quoting Vega v. Artuz, 97CIV.3775LTSJCF, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)) (second alteration in Phillips).  "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for clear error."  IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 07 Civ. 6865 (LTS)(GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing Pearson-Fraser v. Bell Atl., No. 01 Civ. 2343(WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003); Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)); see also Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are 'merely perfunctory responses,' . . .

'rehashing . . . the same arguments set forth in the original petition.'") (citing Vega, 2002 WL 31174466, at *1; Greene v. WCI Holdings, 956 F. Supp. 509, 513 (S.D.N.Y. 1997)).

Here, Defendants have objected to Judge Lehrburger's "similarly situated" findings based on case law that post-dates the parties' briefing. Accordingly, the R&R will be reviewed de novo.

## II.   FAIR LABOR STANDARDS ACT

"Among the bedrock principles of the FLSA is the requirement that employers pay employees for all hours worked." Smiley v. E.I. Dupont De Nemours & Co., 839 F.3d 325, 330 (3d Cir. 2016); see 29 C.F.R. § 778.223 ("Under the Act an employee must be compensated for all hours worked."). "The FLSA generally mandates compensation for the principal activity or activities which an employee is employed to perform." Perez v. City of New York, 832 F.3d 120, 123 (2d Cir. 2016) (internal quotations, alteration, and citation omitted). As such, an employer may not "suffer or permit [an employee] to work" for more hours than the applicable 40-hour overtime threshold without paying that employee time and a half for those hours worked. See 29 U.S.C. §§ 207(a)(1), 203(g).

The FLSA provides that an action to recoup unpaid overtime wages

> may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Section 216(b) is best understood as a joinder device that authorizes similarly situated employees to proceed as a collective in light of the litigation costs associated with pursuing claims individually. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170, 173 (1989).

8

The FLSA does not define "similarly situated" for purposes of Section 216(b). The Second Circuit uses a two-step approach in determining whether opt-in plaintiffs are similarly situated to a named plaintiff. At the first step – the preliminary certification phase – the court determines whether the named plaintiffs have made a "modest factual showing that they and others together were victims of a common policy or plan that violated the law." Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 540 (2d Cir. 2016). "If the plaintiffs make that showing, then the district court allows for a notice to be sent out to potential opt-in plaintiffs." Vecchio v. Quest Diagnostics Inc., No. 16 CIV. 5165 (ER), 2020 WL 5604080, at *10 (S.D.N.Y. Sept. 18, 2020). At the second step – the decertification phase – "the court reexamines the collective after the benefit of discovery and makes a final ruling on whether the collective is in fact similarly situated to the named plaintiffs." Id. At that stage, "the plaintiff has the burden of showing that the opt-in plaintiffs are similarly situated to her." Id. (citing Zivali v. AT & T Mobility, LLC, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011)). "If the plaintiffs fail to meet that burden, which is more stringent than that faced in the preliminary phase, then the opt-in plaintiffs are dismissed without prejudice from the lawsuit." Id.

Until recently, courts in this Circuit used a so-called "ad hoc approach" at the decertification stage. Under that approach, the "similarly situated" inquiry considers three factors: "the (1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against collective action treatment." Zivali, 784 F. Supp. 2d at 460 (alteration, internal quotation marks, and citation omitted).

In Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 517 (2d Cir. 2020), the Second Circuit criticized the ad hoc approach: "rather than considering the ways in which the

9

opt-in plaintiffs are similar in ways material to the disposition of their FLSA claims, district courts employing the ad hoc factors consider the ways in which the plaintiffs are factually disparate and the defenses are individualized." Id. (emphasis omitted). In pursuing the ad hoc approach, courts improperly "import[] through a back door" Fed. R. Civ. P. 23 class certification standards. Id. According to the Circuit, the ad hoc approach has led district courts to conflate the issue of whether plaintiffs are similarly situated under Section 216(b) with the issue of predominance under Rule 23. Id. at 521.

Scott instructs that, rather than assessing "disparities in job duties," district courts should determine whether plaintiffs "share one or more similar questions of law or fact material to the disposition of their FLSA claims." Id. at 520-21. Indeed, "[i]f named plaintiffs and opt-in plaintiffs are similar in some respects material to the disposition of their claims, collective treatment may be to that extent appropriate, as it may to that extent facilitate the collective litigation of collective plaintiffs' claims." Id. at 522. Scott also emphasizes that the "similarly situated" standard is subject to a low bar: "'the FLSA not only imposes a lower bar than Rule 23 [of the Federal Rules of Civil Procedure], it imposes a bar lower in some sense even than Rules 20 and 42, which set forth the relatively loose requirements for permissive joinder and consolidation at trial.'" Id. at 520 (quoting Campbell v. City of Los Angeles, 903 F.3d 1090, 1112 (9th Cir. 2018)).

### III.   JUDGE LEHRBURGER'S R&R

In applying Scott here, Judge Lehrburger finds that Plaintiffs in the two cases share "multiple" similar questions of law and fact material to the disposition of their FLSA claims. (R&R (Foster Dkt. No. 212) at 17) As to factual similarities, Judge Lehrburger cites the following:

> all Plaintiffs in each case were subject to the same CityTime-keeping and compensation policies, including mandatory use of CityTime, mandatory pre-approval of overtime, automatic deduction of one hour for meals, and the City's failure to compensate Plaintiffs

10

> for performing all non-pre-approved pre-shift, meal-period, and post-shift work about which supervisors and managers had knowledge.

(Id. (footnote omitted))  As to questions of law, Judge Lehrburger finds that all Plaintiffs' claims present the legal issue of "the City's obligation under the FLSA to pay for all overtime about which it had knowledge, regardless if pre-approved or not."  (Id.)  Accordingly, Judge Lehrburger concludes that "Plaintiffs easily meet the particularly 'low bar' of the . . . similarly situated standard."  (Id.)

Judge Lehrburger notes that this finding "furthers the goal of collective actions recognized by the Second Circuit," because it permits "employees earning modest wages" to efficiently "vindicate [their] rights by the pooling of resources."  (Id. at 17-18)

In support of his findings that Plaintiffs are similarly situated, Judge Lehrburger cites four recent decision in this District, all of which involve City employees who were subject to the CityTime timekeeping system.  (Id. at 18-20)  For example, in Perry v. City of New York, No. 13-CV-1015, 2019 WL 1146581 (S.D.N.Y. March 13, 2019), "more than 2,500 current or former Emergency Medical Technicians . . . and Paramedics [who] sued the City for unpaid overtime" wages were deemed similarly situated "based on [their] use of CityTime" and their showing concerning the City's overtime compensation policy.  (R&R (Foster Dkt. No. 212) at 18 (citing Perry, 2019 WL 1146581 at *8))

And in Adams v. City of New York, No. 16-CV-3445, 2020 WL 1031025 (S.D.N.Y. March 3, 2020), "a class of 498 employees comprising three different levels of fraud investigators" working for the City's Human Resources Administration were found to be similarly situated based on the City's overtime policies.  (R&R (Foster Dkt. No. 212) at 18-19 (citing Adams 2020 WL 1031025, at *3))

11

Likewise in Worley v. City of New York, No. 17-CV-4337, 2020 WL 915809 (S.D.N.Y. Feb. 26, 2020), three categories of City Police Department School Safety Agents – nearly 4,000 employees in total – were found to be similarly situated, because their "off-the-clock claims arose out of a common policy and practice." (R&R (Foster Dkt. No. 212) at 19 (citing Worley, 2020 WL 915809 at *4, *6))

Finally, in Campbell v. City of New York, No. 16-CV-8719, 2020 WL 2792978 (S.D.N.Y. May 29, 2020), nearly 500 current and former officers and sergeants of the City Department of Homeless Services were subject to the same overtime policy, and were accordingly found to be similarly situated. (R&R (Foster Dkt. No. 212) at 19-20 (citing Campbell, 2020 WL 2792978 at *5))

As in these four cases, Judge Lehrburger finds that "the Foster Plaintiffs and De La Cruz Plaintiffs are similarly situated among their co-plaintiffs with respect to their off-the-clock overtime claims against the City," and that they have "presented persuasive evidence of a common policy or practice that deprived them of full compensation for all their overtime." (Id. at 20)[7]

## IV. DEFENDANT'S OBJECTIONS

The City "objects to the [R&R's] finding that, for purposes of Plaintiff[s'] off-the-clock overtime claims, all the . . . Plaintiffs are similarly situated to each other." (City Objections (Foster Dkt. No. 218) at 5; (De La Cruz Dkt. No. 209) at 5) The City challenges Judge Lehrburger's analysis, arguing that he fails to consider: (1) "several critical factual distinctions between th[ese] case[s] and Scott" which, properly understood, make clear that

---

[7] Judge Lehrburger concludes that Plaintiffs are also "similarly situated" under "the now-defunct ad hoc approach." (R&R (Foster Dkt. No. 212) at 16-17, 21)

"Scott does not require collective treatment"; (2) similar factual distinctions between these cases and the cases relied on in the R&R involving City employees who use CityTime; (3) "the differences attributable to the [De La Cruz] Plaintiffs' vastly different assignments" and the Foster Plaintiffs' "vastly divergent tasks"; and (4) the impact of allowing these cases to proceed as a collective for purposes of trial and future litigation regarding the City's timekeeping policies. (City Objections (Foster Dkt. No. 218) at 5, 9-10, 13-15; (De La Cruz Dkt. No. 209) at 5, 9, 11, 14-16)

According to the City, the outcome recommended in the R&R should be modified to create sub-groups of Plaintiffs in each case. (City Objections (Foster Dkt. No. 218) at 6; (De La Cruz Dkt. No. 209) at 6)

The City contends that the R&R improperly "focuses on the contention that each Plaintiff was subject to the same workplace policies regarding overtime." Such an approach is "insufficient," because it opens the door to allowing "hundreds of thousands of City employees" in other City departments "that utilize CityTime" and employ "uniform overtime policies" to a finding that their employees are likewise "similarly situated" for purposes of an "off-the-clock" overtime compensation claim. (City Objections (Foster Dkt. No. 218) at 11-12; (De La Cruz Dkt. No. 209) at 12-13) According to the City, such a holding would reduce the "similarly situated" analysis solely to "an examination of workplace policies." (City Objections (Foster Dkt. No. 218) at 13; (De La Cruz Dkt. No. 209) at 14)

The City also argues that some of the cases from this District cited in the R&R are distinguishable. For example, the City contends that "Adams, Worley and Campbell . . . were [motions] to decertify the collective" class, whereas the instant cases present the issue of "whether the off-the-clock claims of all the Plaintiffs can proceed collectively to trial." (City

13

Objections (Foster Dkt. No. 218) at 18; (De La Cruz Dkt. No. 209) at 19 (emphasis omitted)) The City also notes that in Worley and Perry, plaintiffs had moved for a finding that certain subgroups were similarly situated based on their work assignments and responsibilities. (City Objections (Foster Dkt. No. 218) at 14-15, 18-19; (De La Cruz Dkt. No. 209) at 15-16, 19-20)

**V.     ANALYSIS**

Scott makes clear that "to be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." Scott, 954 F.3d at 516 (citation omitted). "[P]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." Id. So long as "named plaintiffs and party plaintiffs share legal or factual similarities material to the disposition of their claims, dissimilarities in other respects should not defeat collective treatment." Id. (internal quotation marks and citation omitted).

Here, the CityTime system and the City's timekeeping policies apply to all Plaintiffs and are material to their claims. For example, all Plaintiffs are required to use the CityTime timekeeping system, and all are subject to the same working hour limitations and concomitant rules regarding clocking in and out of the system. (Summary Judgment Order (Foster Dkt. No. 153) at 4-6, 11, 20) The City required all Plaintiffs to obtain pre-approval for overtime, obtain approval for overtime hours worked, and to certify their timesheets. (Id. at 7, 9) And Plaintiffs in both cases have "worked overtime for which they were not compensated," and their "supervisors were aware of this practice." (Id. at 9) This evidence is sufficient to meet the "low[] bar" established in Scott for satisfying the "similarly situated" test. Scott, 954 F.3d at 520. Plaintiffs also share a "similar issue of law" with respect to "the City's obligation under the FLSA to pay for all overtime about which it had knowledge, regardless if pre-approved or not."

14

(R&R (Foster Dkt. No. 212) at 17)  Accordingly, this Court concludes, pursuant to the analysis set forth in Scott, that the Plaintiffs in Foster and De La Cruz[8] are similarly situated to one another.[9]

The City's attempts in its objections to distinguish Scott and limit its application are not persuasive.  The City notes, for example, that the plaintiffs in Scott filed a conditional certification motion early in the litigation, which the City argues "is important because [here] there was never a preliminary finding that the . . . Plaintiffs that were selected by the parties to serve as 'Phase I' Plaintiffs in th[ese] case[s] were similarly situated to each other."  (City Objections (Foster Dkt. No. 218) at 9; (De La Cruz Dkt. No. 209) at 10)  The City does not explain what, if any, impact this circumstance has on the application of Scott here.  To the extent that the City suggests that this Court cannot allow Plaintiffs to proceed in a collective in the absence of a conditional certification, "the Second Circuit endorsed a two-stage inquiry as 'sensible,' but emphasized that it was 'not required by the terms of FLSA or the Supreme Court's cases.'"  Korenblum v. Citigroup, Inc., 195 F. Supp. 3d 475, 482 (S.D.N.Y. 2016) (citing Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 75 (2013) ("The sole consequence of conditional

---

[8]  To the extent that the City argues that the De La Cruz plaintiffs are not similarly situated because they are assigned to work in many different locations (see City Objections (De La Cruz Dkt. No. 209) at 11), "'[i]n this Circuit, courts have regularly found [p]laintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs demonstrate that they were all subject to the same allegedly unlawful policy or practice.'"  Huer Huang v. Shanghai City Corp, No. 19-CV-7702 (LJL), 2020 WL 5849099, at *6 (S.D.N.Y. Oct. 1, 2020), clarified on denial of reconsideration sub nom. Huang v. Shanghai City Corp, No. 19-CV-7702 (LJL), 2020 WL 6136186 (S.D.N.Y. Oct. 19, 2020) (quoting Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013)).

[9]  In its objections, the City contends that "Scott does not explicitly forbid the use of the 'ad hoc' approach."  (City Objections (Foster Dkt. No. 218) at 8; (De La Cruz Dkt. No. 209) at 8)  As discussed above, however, the Second Circuit's criticism of the ad hoc approach makes clear that a district court pursuing such an approach – in the face of Scott – would likely be committing error.

15

certification is the sending of court-approved written notice to employees.")).  Morever, as Scott explains, the decertification phase proceeds "with the benefit of additional factual development," so that courts may "determine[] whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs."  Scott, 954 F.3d at 515 (quoting Glatt, 811 F.3d at 540).  This Court confronts the same task here.  As such, Scott provides an apt framework for that analysis.

Although the City points out that the plaintiffs in Scott "all held the exact same job title, performed the exact same primary job duties and had the exact same exemption classification" (City Objections (Foster Dkt. No. 218) at 10; (De La Cruz Dkt. No. 209) at 10), Scott's holding is not limited to cases presenting precisely these circumstances.  To the contrary, and as discussed above, Scott broadly directs that courts conducting a "similarly situated" analysis should "consider[] the ways in which . . . plaintiffs are similar in ways material to the disposition of their FLSA claims, . . . [rather than focusing on] the ways in which the plaintiffs are factually disparate and the defenses are individualized."  Scott, 954 F.3d at 517 (emphasis omitted).

The City also contends that two of the cases cited by Judge Lehrburger – Worley v. City of New York and Perry v. City of New York – differentiated plaintiffs by job assignment.  (City Objections (Foster Dkt. No. 218) at 14-15; (De La Cruz Dkt. No. 209) at 15-16)

In Worley, the court found that "[a]ll [plaintiffs] are subject to the same rules and policies for timekeeping and overtime, including rules requiring all overtime to be authorized and reviewed by multiple levels of supervisors."  Worley, 2020 WL 915809, at *4.  The court further found that plaintiffs "ordinarily are not compensated for pre-shift, meal-period and travel-time unscheduled overtime work," and that they "work similar length shifts; have an

16

uncompensated meal period; receive similar training and are subject to very similar performance measures." Id. Based on this record, the court concluded that plaintiffs had "persuasively show[n] that the Off the Clock Claim arises out of a common policy and practice." Id. And the court went on to find that "the fact that Defendants have identified individualized issues within each subgroup does not, by itself, establish that they are not similarly situated." Id. at *5. The same is true here: the City's objections based on differences among Plaintiffs in each case are not sufficient to show that Plaintiffs are not similarly situated.

Although the Worley court – at plaintiffs' request – certified plaintiffs in sub-groups, those groups were based not just on different job titles, but also on varied types of claims not present here. See id. at *7 (discussing an "Off the Clock Claim" for one subgroup), *8 (discussing a "travel-time work portion of the Off the Clock Claim" for another).

Likewise in Perry, the court found that plaintiffs "made a persuasive showing that Defendants have a policy or practice requiring EMTs/Paramedics to conduct pre- and post-shift work, and that they are not compensated for all of this work," and that "CityTime accurately captures pre- and post-shift work, demonstrating that Defendants had knowledge of the EMTs/Paramedics' [overtime] work but did not compensate them for it." Perry, 2019 WL 1146581, at *8. A separate sub-group of fire inspectors were deemed similarly situated because they had shown that "CityTime accurately captures [their] work and that Defendants have a policy or practice of not compensating Fire Inspectors for that time." Id. at *9 Contrary to the City's assertion, the decision to create a sub-group of fire inspectors was based not only on a distinction in job titles and functions, but also on evidence demonstrating that fire inspectors' claims were rooted in a different time-keeping method. Id. In sum, nothing in Worley and Perry

17

suggests that this Court should find that Plaintiffs are not similarly situated across job titles and functions.

The City also cites Pequero v. Montafon, LLC, No. 18-cv-12187 (DF), 2020 WL 4016756, at *9 (S.D.N.Y. July 15, 2020), where the court denied conditional certification for some of the proposed plaintiffs based on "the diversity of positions, responsibilities, work hours, and rate of pay." (City Objections (Foster Dkt. No. 218) at 17; (De La Cruz Dkt. No. 209) at 18) The discussion of job similarity in Pequero was a means to determine whether plaintiffs shared a common scheme of payment, however, not a meaningful distinction unto itself. Indeed, the Pequero court determined that it could "fairly infer" from the evidence "that the named Plaintiffs and others who, like them, served in the positions of salad preparers and dishwashers, were subject to the same alleged flat-rate pay scheme and denied overtime wages." Pequero, 2020 WL 4016756, at *9. But the evidence provided "no basis to conclude that [workers in other positions] were subject to common pay policies by Defendants, or that they have claims that share any common questions of fact or law with Plaintiffs' claims." Id. at *10. In sum, the Pequero court found that certain plaintiffs were not similarly situated because plaintiffs' generalized allegations did not demonstrate that they were subject to the same pay policies. The similarly situated determination did not turn on the fact that these plaintiffs had different job titles or functions. See id.

Nevertheless, the City argues that this Court should separate Plaintiffs in each case into similarly situated sub-groups. Plaintiffs do not object, in theory, to the creation of sub-groups for purposes of trial. But they argue that the City's request for sub-groups "is more appropriately addressed in a meet and confer between the parties on a pre-trial stipulation, the Joint Pre-Trial order, and a proposed verdict form." (Pltf. Reponses (Foster Dkt. No. 220) at 6; De La Cruz Dkt. No. 210) at 6)

As to Foster, the City contends that this Court should approve three similarly situated sub-groups based on job title: (1) CPS; (2) CPSS I; and (3) CPSS II. (City Objections (Foster Dkt. No. 218) at 6) In support of this argument, the City notes that CPSS IIs "supervise and approve overtime requests by their co-plaintiff subordinates in the CPS and CPSS I," such that a CPSS II "may testify in such a way to self-determine liability for the proposed collective." (Id. at 13) Plaintiffs in Foster "do not object to using sub-classes for purposes of trial, but believe that only two subclasses are appropriate: CPS and CPSS I in one subclass and CPSS II in the other." (Pltf. Responses (Foster Dkt. No. 220) at 5)

As to De La Cruz, the City contends that three sub-groups of Plaintiffs should be created, premised on work assignments: (1) Family Independence Administration ("FIA"), (2) Homelessness Diversion Program ("HDP"), and (3) Division of Fair Hearing ("DFH"). (City Objections (De La Cruz Dkt. No. 209) at 6) The De La Cruz Plaintiffs respond that "[t]he alleged differences highlighted by the City go primarily to the functions of FIA, HDP and DFH – and the types of benefits that each division is responsible for overseeing – rather than the day-to-day job duties performed by the Plaintiffs in furtherance of each division's function." (Pltf. Responses (De La Cruz Dkt. No. 210) at 14) Plaintiffs propose two sub-groups based on job title: a JOS sub-group and an AJOS sub-group. (Id. at 5)

Because the parties have not adequately briefed the rationales for their competing sub-groups, the Court will not decide at this time what sub-groups will be utilized at trial. This issue would also benefit from further dialogue and negotiation between the parties in each case.

For present purposes, this Court adopts Judge Lehrburger's findings that all Plaintiffs in Foster are similarly situated to one another, and that all Plaintiffs in De La Cruz are similarly situated to one another.

**CONCLUSION**

For the reasons stated above, the R&R is adopted in its entirety and the City's objections are overruled. Plaintiffs' motions for a finding that Plaintiffs are similarly situated are granted. The Clerk of Court is directed to terminate the motions. (Foster Dkt. No. 186; De La Cruz Dkt. No. 178)

By **April 5, 2021**, the parties will submit a joint letter proposing a schedule for the completion of expert discovery.

Dated: New York, New York
March 30, 2021

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge